REUBEN BARTON, Appellee, v. JOHN BENO & COMPANY, et al., Appellants.

Mortgage: MISTAKE IN DESCRIPTION: PRIORITY OF LIENS.   Where a house was erected upon ground belonging to an abandoned street of an unincorporated town, and subsequently mortgaged as a part of lots abutting upon said street, according to the plat of said town, and the mortgage on said lots was treated by both the mortgagor and mortgagee as covering said house, and after foreclosure and issue of sheriff's deed the said house was leased by the mortgagee to the mortgagor, held, the mortgagee upon discovering the mistake in the description in the mortgage was entitled to have the deed reformed to correspond with the real agreement of the parties, and that a court of equity would protect him in the exercise of those rights as against a judgment creditor, who sought to subject the house to a sale under execution as the personal property of said mortgagor.

*Appeal from Pottawattamie District Court.* — HON.
GEORGE CARSON, Judge.

THURSDAY, FEBRUARY 4, 1892.

ACTION in equity to restrain the sale of certain
property on execution. There was a hearing on the
merits, and a decree in favor of the plaintiff. The
defendants appeal.—*Affirmed.*

*Finley Burke* and *Geo. W. Hewitt,* for appellants.

*L. W. Ross* and *D. C. Bloomer,* for appellee.

ROBINSON, C. J.—The site of the town of Crescent
City, in Pottawattamie county, was platted and
the plat thereof duly recorded, in the year 1856,
but the town was never incorporated. The plat
as recorded included blocks number 155 and 168,
each of which was divided into twenty lots, numbered
from 1 to 20, inclusive, and an alley. The lots
extended from east to west, and the alleys from
north to south. The block last specified was north of
the other, from which it was separated by a street sixty
feet in width, known as "May Street." The blocks
were bounded on the west by Central avenue, which
extended from north to south. In the month of
November, 1880, one Joseph McCoid became the
owner of the north twelve lots of block 155, numbered
1, 2, 3, 4, 5, 6, 15, 16, 17, 18, 19 and 20, and of the
lots in block 168. In the latter part of the year 1881,
McCoid erected a two-story frame dwelling house on
May street, near Central avenue, between the blocks
specified. In November of that year, McCoid executed
to the plaintiff a mortgage on his lots in block 155 to
secure the payment of the sum of five hundred dollars,
with interest. In July, 1884, McCoid executed to the
plaintiff a mortgage on his lots in blocks 155 and 168

to secure the payment of an additional sum of five hundred dollars. In January, 1887, the plaintiff obtained a decree foreclosing the mortgages, and ordering the sale of the mortgaged premises for the payment of the sum of twelve hundred and thirty-four dollars and ninety-six cents, due on the mortgage indebtedness, an attorney's fee and costs. The mortgaged premises were sold to satisfy the decree; and, no redemption having been made, sheriff's deeds for the premises were issued to the plaintiff in February, 1888. No reference was made in the mortgages, decree of foreclosure or sheriff's deeds to any property excepting that included in the description of the lots and blocks which we have given. In the year 1886 the defendants, John Beno & Co., obtained a judgment against McCoid for the sum of twelve hundred and ninety-one dollars and thirty-six cents, and to satisfy it have caused an execution to be levied upon the dwelling house we have described. To restrain the sale of that house, this action was brought.

It is claimed by the appellants that the dwelling-house was not included in the mortgages; that no title thereto passed by the sheriff's sale and deeds; and that, as the plaintiff claims title from no other source, he has no right to the dwelling house, which he can assert as against appellants. It appears that the portion of May street between the blocks described has been used for private purposes almost constantly since the year 1869. It was never opened and used as a street; and, for some years before McCoid built his house, it had been divided between the owners of adjacent property, and cultivated and otherwise used by them. After the house was built, McCoid inclosed the street with his lots and used them together. It is shown very clearly that the plaintiff supposed that the house stood on one or more of the lots described in the mortgages; that he was induced to believe that such

was the case by representations made to him by McCoid, and that McCoid regarded the house as included in the mortgages. After the sheriff's deeds were given, McCoid treated the house as the property of the plaintiff and agreed to surrender possession of it at any time the plaintiff desired him to do so. In December, 1888, he accepted from the plaintiff a lease of the lots and house, and thereafter occupied the house as a tenant. It is suggested that the street has been abandoned, and that it thus became appurtenant to the lots on either side; also, that title thereto was acquired by prescription; that it should be treated as distinct from the lots; and that the house is now a part of the realty included in the street. The defendants levied an execution upon the house as distinct from the land upon which it stood, thereby treating it as personal property. It is not material to the result of this action whether the house be treated as a chattel or as real estate. It is clear that as between the plaintiff and McCoid the mortgages were intended to include the house and the interest of the mortgagor in the land upon which it stood, whatever that may have been. If the house be regarded as appurtenant to the land included in the street, and not within the descriptions of the mortgages, the plaintiff, upon discovering the mistake, was entitled to have the mortgages reformed to correspond with the real agreements of the parties to them;. and the mortgagor having recognized the right of the plaintiff, and surrendered to him the possession of the house and appurtenances, a court of equity will protect the plaintiff in the exercise of those rights to which he is in equity entitled. And the same is true if the house be regarded as personal property. When the levy was made, the plaintiff was in possession of the house by a tenant, and the defendants are not shown to have been ignorant of the claims and rights of the plaintiff when the levy was made.

Some claim is made by the appellant that much of

the evidence in regard to property which McCoid intended to mortgage refers to a house which at one time stood on block 168. We think there is no sufficient ground for the claim. The old house is referred to as "a little log cabin," while the one in controversy cost three thousand dollars, and without doubt constituted a large part of the security on which the plaintiff relied in accepting the mortgages. There is nothing to indicate that the claim now made by the appellant was urged in the court below, and the evidence shows satisfactorily that the house built in 1881 is the one which the parties intended to include in the mortgages.

We conclude that the defendants have no right to enforce their claim against the house in question. The judgment of the district court is, therefore, AFFIRMED.